# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TARA L. DANOFF, | ) CASE NO. 1:25-CV-01769-CEH |
| Plaintiff, | ) JUDGE CARMEN E. HENDERSON<br>) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant, | ) |

## I. Introduction

Tara L. Danoff ("Danoff" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 8). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On August 25, 2023, Danoff filed applications for DIB and SSI, alleging a disability onset date of January 1, 2023. (ECF No. 9, PageID #: 45). The applications were denied initially and upon reconsideration, and Danoff requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 30, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 66-90). On September 27, 2024, the

1

ALJ issued a written, partially favorable decision finding Danoff was under a disability from January 1, 2023 through March 4, 2024, but medical improvement occurred such that her disability ended on March 5, 2024. (*Id.* at PageID #: 45-59). The ALJ's decision became final on July 7, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 29-31).

On August 26, 2025, Danoff filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11, 12). Danoff raises a single issue on appeal: "Did the ALJ's finding of medical improvement based on two records constitute substantial evidence and build a logical bridge between the evidence and the conclusion?" (ECF No. 10 at 1).

**III. Background**

    **A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Danoff's hearing:

> At the hearing, the claimant testified that she could no longer work, due to her cerebral palsy and left shoulder. She testified that she took muscle relaxers for her cerebral palsy, but they made her tired. The claimant testified that she also used an AFO brace on her left foot to help stabilize her when walking. The claimant testified that she could only do things for short periods of time, before needing to rest. She testified that her nondominant left arm was only useful in stabilizing her with her starting to have spasms in her arm. She testified that when lifting her arm, her wrist begins to curl inward and her shoulder tightens. The claimant testified that she also used an AFO brace on her left foot to help stabilize her when walking. She testified that she was limited to lifting about 25 pounds, but only with her right arm and that she could only walk around her cul de sac, before needing to rest. She testified that she also needed to walk steps slowly and although she could get down to knee height, this was difficult for her to do. She testified that she drove short distances as needed and generally relied on her husband to shop for her, but when she did go to the store, she used a motorized cart. Finally, she testified that she could cook, but found it difficult as she could not use both hands, which prevented her from chopping or lifting pots.

(ECF No. 9, PageID #: 51). The ALJ provided the following additional summary of Plaintiff's

2

testimony concerning the period after March 5, 2024:

> At the hearing, the claimant testified that she did find that her arm and wrist were opening better with Botox, but still did not feel she could carry anything with left arm. She testified that she was also using the cane more often and getting more muscle spasms in her arms.

(*Id.* at PageID #: 56).

### B. Relevant Medical Evidence

The ALJ summarized Danoff's health records and symptoms for the period she found Danoff was disabled:

> Regarding the claimant's cerebral palsy and left shoulder impairment, the record indicates the claimant reported a fall in January 2023 with her noted as having additional concerns related to her pregnancy at the time (Exhibit 2F/54). The claimant's provider noted her lifelong complications with cerebral palsy, but also noted no concerns at that time with her fall (Exhibit 2F/55). She was noted as weaker on her left side around this time with indications her child was born in February 2023 (Exhibit 2F/31).
>
> Following her daughter's birth, the claimant sought to restart Botox injections in her left arm and leg by the late spring with her reporting past injections with some relief, but as no injections in several years (Exhibits 2F/14; 4F/15-18). By the summer 2023, her provider noted the claimant reported ongoing left side dystonia and spasticity, as well as left hand tendon transfer as a kid with her using no medication for her spasticity, but as using a cane at times when walking distances (Exhibit 2F/16). In evaluating the claimant, her provider indicated the claimant had normal right upper extremity strength and good left upper extremity strength, but also noted difficulties with elbow and finger dystonia, decreased left lower extremity motor function and excessive rotation of her foot and ankle with medial arch collapse with overpronation when ambulating (Exhibit 2F/9-12). At this time, the claimant was given her first Botox injection in her left lower extremity (Exhibit 2F/12-13, 18).
>
> Following this first injection, the claimant was still noted as complaining of foot and ankle pain on left side that increased with standing and walking with her using a cane at times when she has to walk for long periods (Exhibit 2F/7). Her provider noted the

3

claimant with decreased left hip and knee range of motion with limited movement in her foot and ankle due to dystonia, left arm dystonia, no ability to perform a straight leg raise on the left side and an abnormal gait by late summer (Exhibit 2F/8-9).

Even into the fall of 2023, the claimant had complaints of foot pain with prolonged walking, but indicated she had seen some improvement with her pain since the Botox injection (Exhibit 3F/4). Her provider noted the claimant with left shoulder tenderness with decreased range of motion, as well as painful with range of motion with dystonic movement in shoulder and wrist and fingers, diminished sensation in her left foot, decreased range of motion in her left leg and ankle with dystonia, inability to lift leg for a straight leg raise and an abnormal gait with her also evaluated for an orthotic brace for left foot/ankle, which was pushed off until her next Botox injection, which was given in October (Exhibits 3F/4-6; 5F/17-18).

Following this injection, the claimant had continued complaints of left shoulder pain with spasms that drew her left arm into her body (Exhibit 5F/9-10). She had imaging that revealed rotator cuff arthropathy, mild subacromial bursa with mild effusion in AC joint (Exhibit 5F/15, 23). This led to her trying a nerve block in her left shoulder that she reported later as helpful, despite continued pain (Exhibits 4F/7; 5F/6). Despite her reports of it being helpful, her provider noted her with continued left arm weakness, decreased left shoulder range of motion and decreased left lower extremity sensation with undergoing manual shoulder stretching in December 2023 (Exhibits 5F/7; 7F/23, 29).

In January 2024, the claimant was also noted undergoing manual shoulder stretching with some additional indications of some improvement despite continued pain (Exhibit 7F/23, 29). In fact, by February 2024, she had Botox done on her left shoulder as well (Exhibit 8F/18). She reported later that month that her pain had decreased since the injection (Exhibit 7F/12, 15). However, her provider still noted the claimant with left shoulder tenderness, decreased left upper extremity strength and decreased range of motion, but also noted that her range of motion pain decreased following the injection with them able to complete therapy session without increased pain (Exhibit 7F/12-13, 18). Finally, her provider noted that the Botox injection should be tried in a new area for greater relief (Exhibit 7F/17).

(ECF No. 9, PageID #: 51-52).

The ALJ also summarized Danoff's health records and symptoms for the period the ALJ

found Danoff was no longer disabled:

> Treatment notes indicated that by March 5, 2024, the claimant completed her physical therapy with her reporting overall improvement in her pain with her having her husband occasionally stretch her shoulder (Exhibit 8F/5). Her provider also noted the claimant with improved range of motion in her left shoulder with improved strength following completion of physical therapy and with her recent shoulder Botox injection (Exhibits 7F/11; 8F/5-6). By April 2024, the claimant reported that stretching was improving the functioning of her left shoulder with her provider also recommending continued Botox and as even consideration a higher dose (Exhibit 7F/5, 7). Despite this, the claimant was still noted with rigid left ankle and an antalgic gait with some decreased left elbow extension, but she was also noted with intact sensation on her left side (Exhibit 7F/7-8).
>
> Most recently in May 2024, the claimant reported her most recent injection was very helpful with her wrist flexors and lower extremity muscles (Exhibit 8F/1). Her provider noted some continued ankle rigidity, dystonia, abnormal gait and shoulder tenderness, but also noted only minor range of motion limitations in her left shoulder, normal left side sensation throughout with full strength and only feeling pain with resisted external rotation of her left shoulder (Exhibit 8F/2-3).

(*Id.* at PageID #: 56).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. The claimant has not engaged in substantial gainful activity since January 1, 2023, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. From January 1, 2023 through March 4, 2024, the period during which the claimant was under a disability, the claimant had the following severe impairments: cerebral palsy and left shoulder impairment (20 CFR 404.1520(c) and 416.920(c)).

4. From January 1, 2023 through March 4, 2024, the claimant did not have an impairment or combination of impairments that met or

5

medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, from January 1, 2023 through March 4, 2024, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot use her left lower extremity for foot controls; she can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds; she can occasional balance (as defined in the SCO), stoop and crouch, but can never kneel or crawl; she can never use her nondominant left upper extremity to reach, handle, finger and feel; and she should not be exposed to unprotected heights, hazardous machinery or commercial driving.

6. From January 1, 2023 through March 4, 2024, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

…

10. From January 1, 2023 through March 4, 2024, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The claimant was under a disability, as defined by the Social Security Act, from January 1, 2023 through March 4, 2024 (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has not developed any new impairment or impairments since March 5, 2024, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from January 1, 2023 through March 4, 2024.

13. Beginning March 5, 2024, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. Medical improvement occurred as of March 5, 2024, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. After careful consideration of the entire record, the undersigned finds that, beginning March 5, 2024, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can only use her nondominant left arm assist when carrying; she cannot use her left lower extremity for foot controls; she can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds; she can occasional balance (as defined in the SCO), stoop and crouch, but can never kneel or crawl; she can occasionally use her nondominant left upper extremity to reach, handle, finger and feel; and she should not be exposed to unprotected heights, hazardous machinery or commercial driving.

17. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

…

21. Beginning March 5, 2024, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

22. The claimant's disability ended March 5, 2024, and the claimant has not become disabled again since that date 20 CFR 416.994a(b)(3).

(ECF No. 9, PageID #: 49-50, 53-58).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

If an ALJ determines a claimant is disabled and thus entitled to benefits, the ALJ must also determine whether the disability continued through the date of the decision. *See* 20 C.F.R. § 404.1594(a). In making this determination, the ALJ must follow an eight-step process:[1] (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether medical improvement has occurred; (4) if medical improvement occurred, was such related to the claimant's ability to work; (5) if there has not been medical improvement or if such was not related to the claimant's ability to work, do any of the exceptions set out in 20 C.F.R. 404.1594(d) or (e) apply; (6) if the medical improvement related to ability to work, are the combination of the claimant's impairments severe such that they significantly limit the claimant's ability to do basic work activities; (7) if claimant's impairments are severe, does the claimant's RFC allow them to perform their past work; and (8) if claimant cannot do their past work, is there other work the claimant can perform. 20 C.F.R. § 404.1594(f).

## C. Discussion

Danoff raises a single issue on appeal: "the ALJ's finding of medical improvement based on two records does not constitute substantial evidence and build a logical bridge between the evidence and conclusions." (ECF No. 19 at 13). Plaintiff argues that rather than showing medical improvement, the May 2024 note the ALJ relied on "cites treatment provided in the past, Botox

---

[1] The outlined eight-step process governs DIB claims while claims for SSI are evaluated using a seven-step process that eliminates the question as to whether the claimant is engaged in substantial gainful activity. *Compare* 20 C.F.R. § 404.1594(f) *with* 20 C.F.R. § 416.994(b)(5).

injections, which has provided similar short-term relief with an order for increased dosage being the maximum level that could be prescribed, and ongoing significant physical limitations demonstrated by examination." (*Id.* at 14-15). Plaintiff asserts that comparison of December 5, 2023 records with the March 5, 2024 records reveals "range of motion improvement only from 108 to 122 with flexion; abduction increased from 93 to 137; and strength deficits of 4/5 in flexion, abduction, and external rotation," which the Plaintiff characterizes as "well off normal limits" with little to no improvement. (*Id.* at 16). Plaintiff also argues that none of the ALJ's findings "even touched on the fact that Ms. Danoff's left arm was crippled up at the elbow, wrist, hand, and fingers" and it is illogical to use evidence related solely to Plaintiff's left shoulder to find improvement in her ability to reach, handle, finger, and feel. (*Id.* at 16-17).

Within her argument, Plaintiff also challenges the ALJ's consideration of her symptom testimony, arguing the ALJ found her "allegations inconsistent because the objective evidence indicated she was capable of greater functioning than alleged but cited to evidence that misstated facts or was about only the shoulder and not the elbow, wrist, hand, and fingers." (*Id.* at 18). Overall, Plaintiff's position is that the ALJ "found medical improvement despite substantial evidence, objective and subjective, which supported the limitation found for the closed period with no real explanation that built a logical bridge as to why the limitations with handling, fingering, and feeling were rejected." (*Id.* at 19).

The Commissioner responds that the ALJ's decision was supported by substantial evidence such that it should be affirmed. (ECF No. 11 at 1). The Commissioner argues that while Plaintiff highlights the ALJ's reliance on only two records to find medical improvement, she "has not cited any authority stating that an ALJ must cite to a specific number of treatment records when finding medical improvement." (*Id.* at 7). Further, the Commissioner argues "Plaintiff has not identified

any medical opinions indicating that her impairments were disabling at any time during the period at issue" and her cerebral palsy diagnosis alone is insufficient to establish disability without a showing of related limitations. (*Id.*). The Commissioner also notes that the ALJ's RFC for a limited range of sedentary work was "more restrictive" than the State agency opinions such that the RFC was supported by substantial evidence. (*Id.* at 8-9). As to Plaintiff's argument concerning the ALJ's finding of medical improvement based only on evidence related to her shoulder, the Commissioner argues "the ability to reach involves the shoulder and elbow, which were evaluated in the March 5, 2024 treatment record" and "the ALJ explained that by May 2024, Plaintiff said 'her most recent injection was very helpful with her wrist flexors and lower extremity muscles.'" (*Id.* at 9-10).

Plaintiff replies that while Defendant spent much of the brief discussing her left shoulder, "medical findings of the whole arm, not just the left shoulder, showed weakness with elbow extension, flexor tone, significant dystonic movements, the majority of her left wrist held in flexion fingers fixed at MCP, and thumb resting in adduction" and "[t]hese are the issues which caused problems reaching, handling, fingering, and feeling." (ECF No. 12 at 2). Plaintiff argues the ALJ failed to build a logical bridge between the evidence and the findings because it is "illogical to use medical evidence that solely deals with the left shoulder to impute improvement on areas of the body unrelated to the left shoulder." (*Id.* at 3-4).

In determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably

be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon when he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the Court finds Plaintiff's arguments persuasive. In setting forth Plaintiff's RFC for the period from January 1, 2023 through March 4, 2024, the ALJ explained that "the claimant was limited to no use [of] her nondominant left upper extremity to reach, handle, finger and feel, based on evidence of left shoulder tenderness with decreased range of motion, as well as painful [sic] with range of motion with dystonic movement in shoulder and wrist and fingers with indications of spasms and decreased strength." (ECF No. 9, PageID #: 53). The ALJ found that medical improvement occurred as of March 5, 2024, citing Plaintiff's "reported overall improvement by this time in the use of her left upper extremity with Botox injections and efforts to stretch her left shoulder, with her providers noting improved range of motion and strength as well." (*Id.* at PageID #: 55). Thus, while the initial RFC for the period during which Plaintiff was disabled included a limitation that she could "*never* use her nondominant left upper extremity to reach, handle, finger and feel," the ALJ concluded that as of March 5, 2024, Plaintiff could perform these tasks *occasionally* with her left upper extremity but could "only use her nondominant left arm [to] assist when carrying." (*Id.* at PageID #: 50, 56) (emphasis added). The ALJ explained her conclusion by citing "evidence of improved left upper extremity use with indications of only minor range of

12

motion limitations in shoulder, normal left side sensation throughout with full strength and only feeling pain with resisted external rotation of shoulder." (*Id.* at PageID #: 57).

The problem, however, is that the records the ALJ cited as supporting Plaintiff's medical improvement contain findings identical to those the ALJ cited as supporting a period of disability. For instance, in recognizing that Plaintiff had "good left upper extremity strength" but "difficulties with elbow and finger dystonia," the ALJ cited a July 14, 2023 record indicating the following objective findings concerning Plaintiff's left upper extremity:

> Shoulder abduction/adduction- 5/5, elbow flexion 5/5, elbow extension 4-/5 (difficult o accurately assess given flexor tone), Wrist/finger flexors and extensors- has ability to flex and extend but with significant dystonic movements that limit accurate MMT. Majority of visit wrist held in flexion, fingers flexed at MCP and slight extension at PIP/DIP, Thumb rests in adduction and extension at IP joint.

(ECF No. 9, PageID #: 52, 355). However, the ALJ cited identical findings in subsequent records from April and May 2024 as supporting that medical improvement occurred. (*See id.* at PageID #: 56, 906, 934). It defies logic to conclude that objective medical findings that supported a finding of disability for one period somehow also support a finding of medical improvement less than a year later.

Further, even if the Court were to accept that medical improvement occurred concerning Plaintiff's shoulder strength and range of motion, such is only clearly relevant to Plaintiff's abilities to reach, lift, and carry. But the ALJ also found that during the period of disability Plaintiff was unable to handle, finger, and feel with her left upper extremity and there is no explanation of how Plaintiff's alleged shoulder improvements altered these abilities. This is especially concerning given that the ALJ cited not only Plaintiff's "left shoulder tenderness with

13

decreased range of motion" as supporting limitations but also dystonic movement in the "wrist and fingers with indications of spasms and decreased strength." (*Id.* at PageID #: 53).

Overall, the ALJ failed to build a logical bridge between the evidence and her conclusion that Plaintiff experienced medical improvement as of March 5, 2024. Thus, remand for further proceedings is required.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: February 19, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE